UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,

    -against-                    <u>MEMORANDUM & ORDER</u>
                                     22-CR-0494(JS)

TIMOTHY BULLEN, ET AL.,

                Defendants.
-------------------------------X

APPEARANCES


For United States:        Catherine Mary Mirabile, Esq.
                        United States Attorney's Office
                        Eastern District of New York
                        271 Cadman Plaza East
                        Brooklyn, New York 11201

                        Samantha Alessi, Esq.
                        Anthony Bagnuola, Esq.
                        United States Attorney's Office
                        Eastern District of New York
                        610 Federal Plaza
                        Central Islip, New York 11722



For Defendant
Michael Johnson:         Gary Matthew Kaufman, Esq.
                        Law Office of Gary Kaufman, PLLC
                        377 Broadway, 8th Floor
                        New York, New York 10013

                        Nicholas Hine, Esq.
                        Hine Law PLLC
                        P.O. Box 170096
                        Brooklyn, New York 11217

SEYBERT, District Judge:

Michael Johnson (hereinafter, "Defendant Johnson") moves: (1) to dismiss Count One as duplicitous (hereinafter, "Motion to Dismiss"); (2) to sever his from the case of all other defendants (hereinafter, "Motion to Sever"); (3) for an order directing the Government to provide a list of its trial exhibits 45 days prior to the start of trial; (4) for an order directing the Government to provide him with all exculpatory information, information relevant to the credibility of the witnesses, and information which reveals factual inconsistencies "significantly in advance of trial"; (5) for an order directing the Government to disclose any purported prior or subsequent similar act evidence pursuant to Rule 404(b) of the Federal Rules of Evidence ("FRE") (hereinafter, "404(b) Material") 45 days prior to the start of trial (hereinafter, together with items (3)&(4) above, the "Disclosure Motions"); and (6) for an order granting him leave to join in applicable motions of his codefendants (hereinafter, "Joinder Request") (hereinafter, collectively, the "Omnibus Motion" or "Omni. Mot."). (See Omni. Mot., ECF No. 192.)

Defendant Johnson filed his Omnibus Motion on May 15, 2025. (See Omni. Mot.; see Support Memo, ECF No. 192-1.) The Government filed its opposition to Defendant Johnson's Omnibus Motion (hereinafter, "Opposition") on June 18, 2025. (See Opp'n, ECF No. 203.) Defendant Johnson filed his reply in support of his

2

Omnibus Motion (hereinafter, "Reply") on July 11, 2025. (See Reply, ECF No. 207.)

For the reasons stated herein, Defendant Johnson's: Motion to Dismiss is DENIED; Motion to Sever is DENIED; Disclosure Motions are GRANTED in part and DENIED in part; and Joinder Request is DENIED AS MOOT without prejudice to renew.

BACKGROUND[1]

I.    Summary of the Indictment

Count one of the indictment (hereinafter, "Indictment") alleges a single conspiracy among Defendant Johnson and others to engage in a sex trafficking conspiracy in or about and between 2014 and November 2022 (hereinafter, "Count One"). (See Indictment, ECF No. 1, ¶ 1.) Specifically, Count One alleges:

> In or about and between 2014 and the date of this Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants . . . MICHAEL JOHNSON, also known as "Wise," . . . ASHOKBHAI PATEL, also known as "BG" . . ., together with others, did knowingly and intentionally conspire to recruit, entice, harbor, transport, provide, obtain and maintain by any means one or more persons, in and affecting interstate and foreign commerce, and to benefit, financially and by receiving anything of value, from participation in a venture that engaged in such acts, knowing, and in reckless disregard of the fact, that (1) means of force, threats of force, fraud,

---

[1] The facts as relevant to the Court's analysis are recited and are drawn from the Case Docket, the Indictments, and the parties' relevant submissions. Citations to "DX" refer to Defendant Johnson's Exhibits.

3

> coercion and a combination of such means would
> be used to cause such persons to engage in one
> or more commercial sex acts, and (2) one or
> more such persons had not attained the age of
> 18 years and would be caused to engage in one
> or more commercial sex acts, which offense was
> to be effected by force, fraud, coercion and
> a combination such means, contrary to Title
> 18, United States Code, Sections 1591(a)(1)
> and 1591(a)(2).

(Id. ¶ 1.)

## II.   The Government's Account of Events[2]

The Government alleges Defendant Johnson "forcibly sex trafficked multiple women and compelled them to commit commercial sex acts through a combination of force, threats of force, fraud, and coercion."[3]  (Opp'n at 3.)  Specifically, Defendant Johnson is alleged to have worked with his codefendants to use the Sayville

---

[2] For the reader's convenience, the Court notes the following.  The Government includes a "Relevant Factual Background" section in its Opposition.  (See Opp'n at 3-8.)  Defendant Johnson does not include any such "Facts" section in his Support Memo or Reply papers.  (See generally Support Memo; see also Reply.)  Nor does Defendant Johnson dispute the Government's alleged facts as stated in its Opposition.  (See generally Reply.)  However, Defendant Johnson did file an Attorney Declaration with his Omnibus Motion (see Declaration of Gary M. Kaufman ("Decl."), ECF No. 193-1 (sealed)), in which Defendant Johnson's attorney attaches and discusses exhibits and information obtained during discovery. (See Decl.)  Therefore, the Court recites each party's account of events in separate sections. (See supra Section II; see infra Section III.)

[3] While the Government states, "[u]nless otherwise noted, the facts contained in this section are drawn from the Indictment" (Opp'n at 3 n.1), its factual background section includes little to no citations to the Indictment or otherwise.  Therefore, herein, the Court recites the facts based on the Government's account of events as stated in its Opposition, and, accordingly cites thereto.

Motor Lodge (hereinafter, "SML") as a location for criminal activity, including forced prostitution, drug trafficking, and violent acts. (See id.)

The SML was located on Sunrise Highway in Sayville, New York. (See Indictment, ¶ 4.) It was owned by codefendants Narendarakuma Dadarwala and Shardaben Dadarwala (hereinafter, "Defendant Owners"). (See id. ¶ 2; see also Opp'n at 4.) Their son, codefendant Jigar Dadarwala, was an SML employee (hereinafter, "Defendant Jigar") (together with Defendant Owners, the "Dadarwalas"). (See Opp'n at 4.) So, too, was codefendant Ashokbhai Patel (hereinafter, "Defendant Patel"; together with Defendant Johnson, "Defendants"). (Id.) Defendant Johnson and another codefendant, Timothy Bullen (hereinafter, "Defendant Bullen"), are alleged to have operated as sex traffickers at the SML. (Id.)

The Dadarwalas lived at the SML from the 1980s until their arrest on these charges in November 2022. (Id.) Allegedly, Defendant Patel worked and lived at the SML from approximately 2017-2019; Defendant Bullen operated as a sex trafficker at the SML from approximately 2014-2018; and, Defendant Johnson operated as a sex trafficker at the SML from 2018-2020. (See id.)

The Government alleges the investigation revealed the owners and certain employees of the SML were aware of the above criminal activity and actively conspired to perpetrate it. (Id.)

The Dadarwalas and Defendant Patel allegedly: controlled and established prices for room rentals; knew women engaged in prostitution, including at least one minor victim, who were residing at the SML and who were receiving dates for commercial sex; communicated with johns and set up commercial sex dates; warned sex traffickers and women engaging in prostitution on the premises when law enforcement was present at the SML; observed sex traffickers being violent with women on the SML premises; observed johns on the SML premises; and, permitted drug deals to occur on the SML premises. (See id. at 5.)  Further, it is alleged the sex traffickers, women engaged in prostitution, and drug dealers at the SML frequently interacted with the SML staff and called Defendant Narendrakuma Dadarwala "Dad" and "Pa" and called Defendant Shardaben Dadarwala "Mom" and "Ma".  (See id.)

The Government contends "[w]omen who were trafficked by [Defendant] Johnson are expected to offer consistent accounts of his activities at trial."  (Id.)  Defendant Johnson allegedly controlled said women by: confiscating the proceeds they earned from commercial sex acts; posting advertisements for them on websites and setting their rates; giving and withholding drugs to induce the women to stay and continue performing sex acts; isolating the women from other people; and inflicting physical, mental, and emotional abuse on the women.  (See id.)  The Government further asserts the women Defendant Johnson trafficked

observed his "close relationship" with the Dadarwalas "and how the Dadarwalas facilitated and protected [Defendant] Johnson's illegal activities to further the SML's financial interests." (Id.) Based on its investigation into the conspiracy's timeline, the Government asserts "it appears that [Defendant] Johnson became a more prominent figure at the SML when [Defendant] Bullen was incarcerated in 2018; essentially stepping into the shoes of the head sex trafficker at the motel." (Id. at 5-6.)

The Government asserts the following regarding Jane Doe #1. She was a sex worker, who, at first, worked independently at the SML. (Id. at 6.) Jane Doe #1 eventually met Defendant Jonson to purchase drugs from him, and he "convinced her to work for him." (Id.) Defendant Johnson posted advertisements for her and supplied her with heroin while she worked for him. (Id.) He also was allegedly physically abusive toward Jane Doe #1, dragging her across the parking lot and punching her in the face with a fist on more than one occasion. (Id.) Jane Doe #1 remembers the Defendant Owners being present for this and not intervening or contacting the police. (Id.) Allegedly, Jane Doe #1 asked the Dadarwalas to not allow Defendant Johnson on the grounds of the SML, but in or about 2019, Defendant Patel unlocked the door to her room and allowed Defendant Johnson to enter. (Id.) Thereafter, Defendant Johnson raped Jane Doe #1; even though Jane Doe #1 told the SML staff what happened, no one helped her or contacted the police.

7

(Id.)  After that incident, Defendant Johnson would allegedly sit in his car outside Jane Doe #1's room and loudly play music to taunt her.  (Id. at 7.)  Jane Doe #1 observed Defendant Johnson with firearms on many occasions.  (Id.)  Jane Doe #2, Jane Doe #1's sister, also performed commercial sex work at the SML, and observed not only Defendant Johnson's violence toward her sister, but also his supplying her with heroin, and saw him with firearms. (Id.)

     The Government also discusses Jane Doe #3.  Allegedly, she met Defendant Johnson at the SML to procure drugs from him. (Id.)  Defendant Johnson told Jane Doe #3 he wanted her to work for him as a prostitute; when she refused, he became angry, pulled a gun out, stuck it in her mouth, and told her she had to work for him or else he would kill her.  (Id.)  Defendant Johnson "continued to use the firearm when he engaged in rough, 'rape-like' sexual contact with Jane Doe #3 against her will."  (Id.)  Defendant Johnson posted ads for Jane Doe #3 and communicated with the johns she saw.  (Id.)  When Defendant Johnson was arrested, police recovered a firearm from his nightstand, which Jane Doe #3 identified as the one he put in her mouth.  (Id.)  Jane Doe #3 also allegedly noted Defendant Johnson was friendly with Defendant Narendarakuma Dadarwala, to the point that the latter would give the former "favorable deals" for renting multiple rooms at a time, even knowing Defendant Johnson was using the rooms for prostitution

and drug dealing. (Id. at 7-8.)   Jane Doe #3 also observed Defendant Johnson engage in drug deals with Defendant Jigar. (Id. at 8.)

III. Defendant Johnson's Account of Events

By way of sworn declaration of his counsel, Defendant Johnson states that "discovery, and conversations with the Government, have revealed that [Defendant] Bullen and [Defendant] Johnson are accused of being sex traffickers or 'pimps' who conducted their business, at least in part, out of the [SML], although discovery connecting [Defendant] Johnson to sex trafficking at that location is scant." (Decl., ¶ 8.)   Defendant Johnson further asserts that the only discovery connecting himself to SML is a photo array where he is identified by a person who claimed that he is "the person who pimped me out at the Sayville Motor Lodge, Suffolk County N.Y. in the beginning of November 2018." (Id. (quoting DX A, ECF No. 193-2 (sealed)).)

Defendant Johnson claims the "only other evidence" of him engaging in criminal behavior at the SML is connected to his 2018 arrest and subsequent conviction, and that the 2018 Suffolk County Indictment, No. 2261-2018 (id. ¶ 9 (citing DX B, ECF No. 192-4)), related Suffolk County Criminal Court complaint (id. (citing DX C, ECF No. 192-5)), and related search warrant affidavit (id. (citing DX D, ECF No. 192-6)), stem from charges connected to a search warrant executed in Room 116 of the SML for narcotics and

9

the possession of a firearm.  (Id.)  Further, the Suffolk County Police Department's observations did not include Defendant Johnson coordinating with anyone else.  (Id. ¶ 10.)  And, Mr. Johnson had a registration card (id. (citing DX E, ECF No. 192-7)), indicating he was "a paying customer" of the SML.  (Id.)

Defendant Johnson further states the Government's discovery did not contain "any contact or communication between [Defendant] Johnson and [Defendant] Bullen, and, in fact, shows that [Defendant] Bullen was incarcerated during the period of time [Defendant] Johnson was surveilled."  (Id. ¶ 11.) Additionally, records relating to Defendant Bullen's 2018 Suffolk County Indictment, No. 1829-2018 (id. ¶¶ 12-13), such as a presentence investigation report (id. ¶ 12 (citing DX F, ECF No. 193-3 (sealed))), and a search warrant and affidavit (id. ¶ 13 (citing DX G, ECF No. 193-4 (sealed))), do not describe anyone other than female prostitutes, and a singular named man (id. (citing DX H, ECF No. 193-5 (sealed))) being involved with Defendant Bullen's operation out of the SML.  (Id.)

Defendant Johnson's counsel further declares "[a]fter a thorough review of all discovery that has been provided, I have not been able to find anything which shows any communication, especially prostitution related communication, or contacts, between [Defendant] Johnson and any of the other codefendants charged in this case."  (Id. ¶ 14.)  He also asserts Defendant

10

Johnson was incarcerated for most of the period of the charged
conspiracy, specifically pointing out that Defendant Johnson was
incarcerated for a majority of the time after Defendant Bullen was
released from his incarceration in early 2020.  (Id. (citing DX I,
ECF No. 192-11).)

IV.  Procedural History

        On November 1, 2022, a grand jury sitting in the Eastern
District of New York returned the Indictment charging Defendant
Johnson and five co-defendants, in Count One, with a sex
trafficking conspiracy pursuant to 18 U.S.C. Section 1954(c).  (See
Indictment, ¶ 1.)  Defendant Johnson was arrested on November 21,
2022, in a Delaware correctional facility, where he was serving
another sentence of eight years for felony firearms and drug
offenses.  (See ECF No. 51; see also Opp'n at 3.)  On January 4,
2023, Defendant Johnson was arraigned in the Eastern District of
New York.  (See ECF No. 56.)  On that same date, this Court ordered
the detention of Defendant Johnson pending trial.  (See ECF No.
58.)

        Discovery ensued.  (See, e.g., ECF Nos. 64-122.)  On April
29, 2025, both Defendant Owners pled guilty pursuant to agreements
with the Government.  (See ECF Nos. 186-189 (sealed); see also
Opp'n at 4 n.5.)  As of this date, both Defendant Jigar and
Defendant Bullen are undergoing competency proceedings.  (See ECF
No. 156 (sealed); see ECF No. 199 (sealed); see also, e.g., Feb.

11

12, 2025 Elec. Order; June 17, 2025 Elec. Order; July 24, 2025 Elec. Order; Opp'n at 4 n.5.)

A trial date for Defendant Johnson and Defendant Patel has been set for October 20, 2025 (see ECF No. 148; see also ECF No. 182).  Defendant Johnson filed his pretrial Omnibus Motion on May 15, 2025.[4] (See Omni. Mot.; see Support Memo.)  The Government filed its Opposition on June 18, 2025.  (See Opp'n.)  Defendant Johnson filed his Reply on July 11, 2025. (See Reply.)

V.    The Instant Motions

Defendant Johnson now moves for the Court to: (1) dismiss Count One as duplicitous; (2) sever his case from the case of all other defendants; (3) direct the Government to provide a list of its trial exhibits 45 days before the beginning of trial; (4) direct the Government to provide Defendant Johnson with all exculpatory information, information relevant to the credibility of the witnesses, and information which reveals factual inconsistencies; (5) direct the Government to disclose any purported prior or subsequent similar act evidence pursuant to FRE 404(b) 45 days before the beginning of trial; and, (6) grant Defendant Johnson leave to join in applicable motions of his

---

[4] Defendant Patel also filed a pretrial motion to sever less than two weeks after Defendant Johnson.  (See ECF No. 196).  This Court's ruling on Defendant Patel's pretrial motion to sever is being addressed in a separate order.

codefendants.  (See Omni. Mot. at 1-2.)  In particular, Defendant Johnson seeks:

> (1) An Order dismissing Count One as duplicitous because this Count charges multiple conspiracies, pursuant to FED. R. CRIM. P. 12(b)(3)(B)(i);

> (2) An Order severing [Defendant] Johnson's case from the cases of all other defendants, on the grounds that (a) it is not properly joined pursuant to Fed. R. Crim. P. 8(b); and (b) the failure to sever [Defendant] Johnson's case from all of the other defendants will result in prejudice to [Defendant] Johnson's ability to obtain a fair trial, pursuant to FED. R. CRIM. P. 14(a);

> (3) An Order directing the Government to provide a list of its trial exhibits forty-five days prior to the commencement of trial;

> (4) An Order directing the Government to provide [Defendant] Johnson with all the information in its possession, custody, or control, the existence of which is known or through the exercise of due diligence may become known, which is (a) exculpatory or otherwise favorable to the defendant; (b) relevant to the credibility and/or character of the witnesses which the Government seeks to call at the trial of this indictment; or (c) reveals factual inconsistencies with the proof which shall be presented by the Government at trial, pursuant to the Fifth, Sixth and Fourteenth Amendments to the Constitution, the inherent and supervisory powers of this Court, and the decisions in Brady v. Maryland, 373 U.S. 83 (1963) and its progeny and FED. R. CRIM. P. 5(f);

(5)    An Order directing the Government to
       disclose any purported prior or
       subsequent similar act or other "bad act"
       evidence, under FED. R. EVID. 404(b),
       which the Government will seek to offer
       against [Defendant] Johnson during the
       presentation of its case-in-chief,
       forty-five days prior to trial, pursuant
       to the inherent and supervisory powers of
       this Court;

(6)    An Order granting [Defendant] Johnson
       leave to join in the motions of his
       codefendants insofar as they are
       applicable to him; and

(7)    Such other and further relief as the
       Court may deem just and proper.

(Id.)

DISCUSSION

I.    Motion to Dismiss

Defendant Johnson contends Count One, the lone count against him, should be dismissed because it is duplicitous, meaning, it joins "two or more distinct crimes in a single count." (Support Memo at 6.)  He argues that a single conspiracy, linked by common purpose, overlapping participants, and mutual dependence, does not exist here; rather, what is at work are "multiple conspiracies of a similar nature [] linked by a common participant."  (Id. at 6-7.)  Defendant Johnson contends the discovery "does not show that [Defendant] Bullen and [Defendant] Johnson knew each other, communicated with each other, or that their criminal conduct bore any connection or occurred at the same

time." (Id. at 8.)  He further argues that he and Defendant Bullen were incarcerated during opposite time periods, operated out of different rooms at the SML, and the evidence from the investigations does not connect him and Defendant Bullen in any way "beyond their independent choice to commit their criminal activities out of the same location." (Id. (citing Decl. ¶¶ 12, 14; further citing DXs D&G).)  Defendant Johnson also asserts there is no evidence indicating he conspired with the SML owners and employees to engage in sex trafficking. (Id. at 8-9.)  Instead, he was a paying customer at the motel, as evidenced by a registration card. (Id. at 9 (citing DX E).)  Ultimately, Defendant Johnson contends the evidence points to separate criminal conspiracies not joined by anything other than geographic proximity; thus, Count One of the Indictment should be dismissed as duplicitous, since it "jointly charges multiple conspiracies under a single count." (Id.)

In opposition, the Government argues Defendant Johnson's argument is premature at this juncture, because the existence of a single conspiracy or multiple conspiracies "must be determined by the jury." (Opp'n at 12.)  In the alternative, the Government asserts that, even if the Court were "inclined to entertain this argument before trial," Defendant Johnson's motion would still fail, because, at most, the Government would be required to reformulate the Indictment, not dismiss it. (Id.)  The Government

15

further contends, because the Court must accept the factual allegations contained in the Indictment as true, the Court can also "safely conclude" the Indictment sufficiently alleges Defendant Johnson conspired with the Defendant Owners and other employees at SML "to carry out and conceal his criminal activity, to their mutual financial benefit." (Id.) Moreover, the Government rebuts Defendant Johnson's argument that he and Defendant Bullen did not work as a team given they operated their illegal activities at different times because "differences in time periods or changes in membership do not transform a single conspiracy into multiple conspiracies." (Id. at 13.) The Government posits the Defendant Owners provided a central hub at the SML for criminals to operate from, and while Defendant Johnson and Defendant Bullen did not work together, "they were certainly aware of, and permissive of, each other's presence at the motel"; thus, since Defendant Johnson participated in the enterprise "with a consciousness of its general nature and extent," his Motion to Dismiss on duplicity grounds must fail. (Id. at 13-14.)

In his Reply, Defendant Johnson largely reiterates his argument that the information proffered in the Government's Opposition exemplifies multiple conspiracies, not one single conspiracy. (Reply at 4-6.)

A. Legal Standard

A defendant may move to dismiss an indictment under Rule 12(b) of the Federal Rules of Criminal Procedure where, inter alia, it is duplicitous, meaning, it joins two or more offenses in the same count.  FED. R. CRIM. P. 12(b)(3)(B)(i).  "An indictment is impermissibly duplicitous where: (1) it combines two or more distinct crimes into one count in contravention of [Rule] 8(a)'s requirement that there be a separate count for each offense, and (2) the defendant is prejudiced thereby."  United States v. Russo, No. 20-CR-0023, 2021 WL 1723250, at *2 (E.D.N.Y. Apr. 30, 2021) (quoting United States v. Vilar, 729 F.3d 62, 79 (2d Cir. 2013) (citation modified)).

As a general matter, "[a]n indictment is sufficient when it contains the elements of the offense charged, fairly informs a defendant of the charge against which he must defend, and includes enough detail that the defendant may plead double jeopardy in a future prosecution based on the same set of events."  United States v. Rosado, No. 21-CR-0003, 2021 WL 2292856, at *1 (S.D.N.Y. June 4, 2021) (quoting United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (citation modified)).  However, "[t]he dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights."  United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) (citation omitted); see also United States v. Sammy, 763 F. App'x

45, 46 (2d Cir. Feb. 27, 2019) (quoting De La Pava, 268 F.3d at 165).

In evaluating a pretrial motion to dismiss an indictment, "the Court accepts the allegations in the indictment as true and focuses on the legal sufficiency of the indictment itself, without ruling on the legal sufficiency of the evidence or contrary assertions of fact." Rosado, 2021 WL 2292856, at *1 (quoting United States v. Rubin/Chambers, Dunhill Ins. Servs., 798 F. Supp. 2d 517, 522 (S.D.N.Y. 2011)); see also United States v. Marsalis, 314 F. Supp. 3d 462, 465 (E.D.N.Y. 2018) ("Courts must accept as true the allegations in an indictment for purposes of evaluating a motion to dismiss."). However, the court is not permitted to look beyond the face of the indictment and draw inferences as to the proof that would be introduced by the government at trial. United States v. Larson, 807 F. Supp. 2d 142, 151 (W.D.N.Y. 2011) (citing Alfonso, 143 F.3d at 776 (citation modified)), aff'd sub nom., United States v. Kirsch, 903 F.3d 213 (2d Cir. 2018). The only time the court may consider the sufficiency of the government's evidence on a pretrial motion to dismiss the indictment is when "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial." Rosado, 2021 WL 2292856, at *1 (quoting United States v. Sampson, 898 F.3d 270, 282 (2d Cir. 2018)).

B. Analysis

First, many of Defendant Johnson's arguments regarding Count One's duplicity arise from the fact that he claims there is insufficient evidence to prove his involvement. (<u>See</u> Support Memo at 8 (claiming discovery "does not show [] [Defendant] Bullen and [Defendant] Johnson knew each other, communicated with each other, or that their criminal conduct bore any connection or occurred at the same time" and asserting "there is no evidence . . . that shows [] [Defendant] Johnson conspired with or knew that the owners and employees of the [SML] were involved in a conspiracy to engage in sex trafficking"), and at 9 (arguing there is no evidence showing "the individuals in the Bullen, Johnson, or [SML] conspiracy depended upon and supported each other").)

However, these arguments are not appropriate for pretrial resolution as they are directly related to the sufficiency of the evidence. <u>See</u> <u>Larson</u>, 807 F. Supp. 2d at 151 ("This Court is not permitted to 'look [] beyond the face of the indictment and [draw] inferences as to the proof that would be introduced by the government at trial.'" (quoting <u>Alfonso</u>, 143 F.3d at 776)); <u>see</u> <u>also</u> <u>Rosado</u>, 2021 WL 2292856, at *2. The only circumstances in which a court could consider the sufficiency of the Government's evidence at this stage would be if the Government made a full proffer of the evidence it intends to present at trial. <u>See</u> <u>Rosado</u>, 2021 WL 2292856, at *1 (citing <u>Sampson</u>, 898 F.3d at 282).

19

However, that is not the case here; there is "no suggestion . . . that the prosecution has made a 'detailed presentation of the entirety of the evidence.'" See id. at *2 (citing Alfonso, 143 F.3d at 776-77).  Thus, the Court can only address the sufficiency of the Indictment on its face.  See id.

Second, Defendant Johnson argues there is not one sole conspiracy, but as many as three separate conspiracies, joined in one sole count of the Indictment, which is duplicitous.  (Support Memo at 9.)  However, "[a] single count of a conspiracy to commit several crimes is not duplicitous, for '[t]he conspiracy is the crime, and that is one, however diverse its objects.'"  Russo, 2021 WL 1723250, at *3 (quoting United States v. Williams, 705 F.2d 603, 624 (2d Cir. 1983)).  Furthermore, the Second Circuit has held that "[w]hether the government has proven the existence of the conspiracy charged in the indictment [or] several independent conspiracies is a question of fact for a properly instructed jury."  See id. (quoting United States v. Johansen, 56 F.3d 347, 350 (2d Cir. 1995) (emphasis added)).  As a result, courts frequently deny pretrial motions to dismiss conspiracy counts for duplicity. See id.; see United States v. Fernandez, No. 97-CR-0233, 1999 WL 1038049, at *1 (S.D.N.Y. Nov. 16, 1999) ("Whether the evidence will prove the single conspiracy charged, or multiple conspiracies, cannot be determined on the face of the indictment since it is a factual issue for the jury."); see also

20

United States v. Szur, No. 97-CR-0108, 1998 WL 132942, at *11 (S.D.N.Y. Mar. 20, 1998) ("[S]ince the Indictment on its face sufficiently alleges a single conspiracy, the question of whether a single or multiple conspiracies exist is a question for the jury and is not a basis to dismiss the conspiracy count."); United States v. Conesa, 899 F. Supp. 172, 174 (S.D.N.Y. 1995) ("The [g]overnment's indictment charges, and the [g]overnment maintains that the evidence will prove, a single conspiracy.").

Count One of the Indictment alleges a conspiracy among Defendant and others to engage in a sex trafficking conspiracy in or about and between 2014 and November 2022. (Indictment, ¶ 1.) Whether the Government will successfully prove a single conspiracy or multiple conspiracies is not something the Court can determine on a pretrial motion to dismiss. This is because, as the Second Circuit has repeatedly held, the question of whether one or multiple conspiracies exist is a question of fact that the jury must decide. See Johansen, 56 F.3d at 350; United States v. Aracri, 968 F.2d 1512, 1519 (2d Cir. 1992); United States v. Alessi, 638 F.2d 466, 472 (2d Cir. 1980). Thus, accepting the allegations in the Indictment as true, the Court must find Defendant Johnson's Motion to Dismiss is without merit.

Moreover, assuming arguendo Count One is duplicitous, which it is not, the proper remedy is not to dismiss the count. "Duplicity, of course, is only a pleading rule and would in no

event be fatal to the count." United States v. Arguedas, No. 20-CR-0135, 2021 WL 5567749, at *1 (S.D.N.Y. Nov. 29, 2021) (quoting United States v. Droms, 566 F.2d 361, 363 n.1 (2d Cir. 1977)). The Government may decide to proceed on proving one of the distinct crimes at trial or the Court can issue an appropriate jury instruction.  See United States v. Sturdivant, 244 F.3d 71, 79 (2d Cir. 2001) ("[P]rejudice to the defendant can be avoided by having the government elect to proceed based upon only one of the distinct crimes included within a duplicitous count . . . or by a jury instruction that ensures that the jury is unanimous as to the conduct underlying the conviction . . . .").

Accordingly, Defendant Johnson's motion to dismiss Count One of the Indictment as duplicitous is DENIED.

## II. Motion to Sever

Defendant Johnson moves to sever his case from the case of other charged codefendants pursuant to both Rules 8(b) and 14(a) of the Federal Rules of Criminal Procedure to prevent spillover prejudice.[5]  As to Rule 8(b), Defendant Johnson argues, although joinder is generally permitted when multiple defendants are charged with a single conspiracy, the discovery in this case "makes clear" that there is not one conspiracy, but separate conspiracies to commit sex trafficking by different groups acting independent

---

[5] The only other codefendant Defendant Johnson will be tried with is Defendant Patel.  (See supra Section IV.)

of one another.  (Support Memo at 10-11.)  As to Rule 14(a),
Defendant Johnson argues the jury will hear evidence about
conspiracies of which he was not a part and be presented with
evidence unrelated to him, which would be prejudicial. (Id. at
12.)

        In response, the Government argues joinder under Rule
8(b) is "wholly appropriate" here since the decision to join
parties depends on what the Indictment alleges.  (Opp'n at 16.)
As to Defendant Johnson's prejudice argument, the Government
contends severance requires evidence against one defendant must be
"far more damaging" than the evidence against the other defendant
to warrant severance.  (Id.)  Furthermore, Defendant Johnson does
not identify sufficient disparities as to evidence against
Defendant Patel that would prejudice him; if anything, the evidence
against Defendant Johnson is more damaging than the evidence
against Defendant Patel. (Id. at 16-17.)

        In his Reply, Defendant Johnson clarifies he will not be
admitting at trial he was a "pimp" as part of a single conspiracy
or multiple conspiracies, and will continue to deny all allegations
he was involved in sex trafficking.  (Reply at 7.)

    A. Legal Standard

        Rule 8(b) of the Federal Rule of Criminal Procedure
regarding joinder of defendants, states, in part: "The indictment
or information may charge 2 or more defendants if they are alleged

to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). "[J]oinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants or arise out of a common plan or scheme." United States v. Isen, No. 17-CR-0372, 2019 WL 6875369, at *1 (E.D.N.Y. Dec. 17, 2019) (quoting United States v. Rittweger, 524 F. 3d 171, 177 (2d Cir. 2008)). Whether joinder is proper "must be determined on a case-by-case basis" and using "commonsense." Id. (quoting Rittweger, 524 F. 3d at 177-78). Additionally, "[j]oinder is particularly appropriate where defendants have been charged with a common conspiracy or related conspiracies. A conspiracy constitutes participation in 'a common plan or scheme.'" United States v. Guillen-Rivas, 950 F. Supp. 2d 446, 454 (E.D.N.Y. 2013) (quoting United States v. Nicolo, 421 F. App'x 57, 64-65 (2d Cir. 2011), cert. denied sub nom., Schwab v. United States, 565 U.S. 918 (2011)). Because of that, the "established rule" is "a non-frivolous conspiracy charge is sufficient to support joinder of defendants under [Rule] 8(b)." Id. (quoting United States v. Nerlinger, 862 F.2d 967, 973 (2d Cir. 1988)). Indeed, "[t]he mere allegation of a conspiracy presumptively satisfies Rule 8(b), since the allegation implies that the defendants named have engaged in the same series of acts

24

or transactions constituting an offense." Id. (quoting United States v. Friedman, 854 F.2d 535, 561 (2d Cir. 1988).

Rule 14(a) of the Federal Rule of Criminal Procedure regarding relief from prejudicial joinder, states, in part: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14(a). Nonetheless, "[t]he Supreme Court has expressed a strong preference in the federal system for joint trials of defendants who are indicted together to promote efficiency and serve the interests of justice by preventing the inequity of inconsistent verdicts." Isen, 2019 WL 6875369, at *1 (quoting United States v. Shkreli, 260 F. Supp. 3d 247, 252–53 (E.D.N.Y. 2017)). Further, "a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. (quoting Shkreli, 260 F. Supp. 3d at 253); see also United States v. Fasasi, No. 22-CR-1922, slip op. at 3–4 (2d. Cir. Aug. 4, 2025) (summ. order). Furthermore, because Rule 8(b) "authorizes some prejudice against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in

25

substantial prejudice." Id. (quoting United States v. Amato, 15 F.3d 230, 237 (2d. Cir. 1994)).

B. Analysis

In this sex trafficking conspiracy case, the Court finds that joinder is proper and severance is not warranted. With regard to Defendant Johnson's arguments concerning severance pursuant to Rule 8(b), the Government avers that "there will be testimony from Jane Doe #1 . . . that after she asked the SML staff not to allow [Defendant] Johnson back on the grounds, [Defendant] Patel let [Defendant] Johnson into her room. [Defendant] Patel also helped arrange commercial sex dates for the women who worked for [Defendant] Johnson, leading to [Defendant] Patel, [Defendant] Johnson and the SML's shared benefit." (Opp'n at 17.) While Defendant Johnson argues there are multiple independent conspiracies (Support Memo at 10-11), which the Court has explained above is a question for the jury (see supra Section I.B), Defendant Johnson and Defendant Patel are alleged to have aided each other in a sex trafficking conspiracy arising out of the same location, i.e., the SML. Moreover, even if Defendant Johnson and Defendant Patel are members of separate conspiracies, "joinder of more than one conspiracy is appropriate . . . provided the defendants participated in the same act or transaction or series of acts or transactions." Guillen-Rivas, 950 F. Supp. 2d at 454 (citing Rittweger, 524 F.3d at 178); see also United States v. Attanasio,

26

870 F.2d 809, 815 (2d Cir. 1989) (upholding joinder of defendants who were in separate conspiracies because the conspiracies had a common purpose and there was "an overlap of participants and acts"). Even if Defendant Johnson and Defendant Patel are involved in separate conspiracies, pursuant to the allegations in the Indictment, there is a common purpose and an overlap of participants and acts, which at this juncture, sufficiently permits joinder.

Defendant Johnson's arguments in favor of severance pursuant to Rule 14(a) fall short. Defendant Johnson acknowledges "a defendant bears a heavy burden to demonstrate sufficient prejudice to warrant severance." (Support Memo at 11.) Moreover, he has not identified a "serious risk" that a joint trial with Defendant Patel would compromise a trial right or prevent the jury from making a reliable judgment. See Isen, 2019 WL 6875369, at *1. Rather, Defendant Johnson simply argues he will be prejudiced because the "jury will have to sit through a trial, where the majority of the evidence is unrelated to him." (Support Memo at 12.) Said argument does not demonstrate any trial right is in jeopardy or provide a persuasive rationale why the jury would be prevented from making a reliable decision. Indeed, a jury having to hear unrelated evidence does not amount to "substantial prejudice." Isen, 2019 WL 6875369, at *1-2.

In sum, the Court finds that severance is not warranted. The Court is confident a jury will be able to consider evidence properly such that it understands which evidence is against Defendant Johnson as opposed to Defendant Patel. Thus, Defendant Johnson's Motion to Sever is DENIED.

### III. Disclosure Motions

Defendant Johnson requests the Court order the Government to disclose the following items prior to the start of trial: (1) a list of its trial exhibits no later than 45 days before the start of trial; (2) all exculpatory information, information relevant to the credibility of the witnesses, and information which reveals factual inconsistencies "significantly in advance of trial"; and (3) any purported prior or subsequent similar act evidence pursuant to FRE 404(b) no later than 45 days before the start of trial. (See Omni. Mot. at 1-2.) As to the exhibits, Defendant Johnson contends because there is little discovery as to the sex trafficking charged in the Indictment, nearly all the discovery related to those charges falls within 18 U.S.C. § 3500 material (hereinafter, "3500 Material"), and the Court should direct the Government to identify the documents it intends to rely upon in its case in chief in advance of trial. (Support Memo at 13.) As to Brady and Giglio material, Defendant Johnson argues such material should be turned over significantly in advance of trial so it can be investigated and used in a proper

28

manner. (Id. at 13-14.) And as to 404(b) Material, Defendant Johnson asserts "there is no good reason why the Government should not notify Mr. Johnson well in advance of trial of its intent to offer such evidence, if such an intent exists" because the Government should not be allowed to surprise a defendant shortly before trial with such evidence. (Id. at 14-15.)

The Government's response is that it understands its various discovery obligations with regard to Rule 16, Brady, Giglio, and their progeny, and it has complied with those obligations, and will continue to do so. (Opp'n at 18.) The Government states it intends to produce "witness lists, exhibits, 3500 [M]aterial, and 404(b) [M]aterial . . . in advance of trial, by the date ordered by the Court." (Id.)

Defendant Johnson's Reply asserts, since the Government indicates it will turn over the requested material "in advance of trial, by the date ordered by the Court," and nearly all relevant evidence against Defendant Johnson is included in those materials, the Court should set the turnover date as September 5, 2025 – 45 days before the October 20, 2025 trial date. (Reply at 7-8.)

A. *Brady / Giglio* Material

The Government has stated it "understands its various discovery obligations under Rule 16, Brady, Giglio, and their progeny, and has complied with those obligations, and will continue to do so, including at the appropriate time in advance of trial."

29

(Opp'n at 18.)  However, "[c]ourts in the Second Circuit generally do not compel immediate disclosure of Brady/Giglio materials where (1) the Government represents it is aware of and will comply with its Brady/Giglio obligations, and (2) the Defense does not provide any reason for suspecting the Government will not comply."  United States v. Mohamed, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015) (citing United States v. Rivera, 89 F.Supp.3d 376, 396–97 (E.D.N.Y.2015)); see also United States v. Rodriguez, No. 19-CR-0779, 2020 WL 5819503, at *10 (S.D.N.Y. Sept. 30, 2020) (stating "[c]ourts in this Circuit have repeatedly declined to issue pretrial discovery orders pertaining to Brady and Giglio material, upon a good faith representation by the government that it has complied — and will continue to comply — with its disclosure obligations").  Because the Government has represented it is aware of its obligations and will continue to comply with them (see Opp'n at 18), and because Defendant Johnson has not provided any reasons for suspecting the Government will not comply with its obligations (see generally Support Memo; see also Reply at 7-8), Defendant Johnson's Disclosure Motion with regard to these aforementioned materials in this section is DENIED.

> ### B. Witness Lists, Exhibits, 3500 Material, 404(b) Material

With respect to witness lists, exhibits, 3500 Material, and 404(b) Material, the Government has agreed it "intends to

produce these materials in advance of trial, by the date ordered by the Court." (Opp'n at 18.) Defendant Johnson has requested for these to be disclosed no later than 45 days prior to the start of trial, which is September 5, 2025. (See Support Memo at 13-15; see Reply at 7-8.) The Government has not indicated any opposition to this proposed deadline. (See generally Opp'n.) Thus, due to the lack of opposition on the Government's behalf (see id.), and because "[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district," FED. R. CRIM. P. 57(b), and "[t]he rule[s] [are] intended to prescribe the minimum amount of discovery to which the parties are entitled . . . not [] limit the judge's discretion to order broader discovery in appropriate cases," FED. R. CRIM. P. 16 advisory committee's note to 1974 Amendment, Defendant Johnson's Motion with regard to these aforementioned materials in this section is GRANTED. Therefore, the Government is hereby ORDERED to produce witness lists, exhibits, 3500 Material, and 404(b) Material no later than September 5, 2025.

IV.  Joinder Request

Defendant Johnson also requests leave "to join in the motions of his codefendants insofar as they may be applicable to him." (Support Memo at 15.) The Government does not oppose this request. (See generally Opp'n.)

31

The only other motion presently before the Court in which Defendant Johnson could join is Defendant Patel's pretrial motion to sever (see ECF No. 196). However, Defendant Johnson has already filed his own Motion to Sever (see Omni. Mot.), upon which the Court has ruled. (See supra Section II.B.)

Thus, the Court DENIES Defendant Johnson's Joinder Request as moot, without prejudice to renew.

CONCLUSION

Accordingly, for the stated reasons, IT IS HEREBY ORDERED that Defendant Johnson's Omnibus Motion (ECF No. 192) is GRANTED in part and DENIED in part, such that:

A. Defendant Johnson's Motion to Dismiss is DENIED;

B. Defendant Johnson's Motion to Sever is DENIED;

C. Defendant Johnson's Disclosure Motions are GRANTED in part and DENIED in part; and,

D. Defendant Johnson's Joinder Request is DENIED AS MOOT without prejudice to renew; and

IT IS FURTHER ORDERED that the Government is to produce witness lists, exhibits, 3500 Material, and 404(b) Material no later than September 5, 2025.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August 5, 2025
       Central Islip, New York