UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,

   -against-

MICHAEL JOHNSON,

                Defendant.
-------------------------------X

MEMORANDUM & ORDER
22-CR-0494(JS)

APPEARANCES

For United States:       Catherine Mary Mirabile, Esq.
                         United States Attorney's Office
                         Eastern District of New York
                         271 Cadman Plaza East
                         Brooklyn, New York 11201

                         Samantha Alessi, Esq.
                         Anthony Bagnuola, Esq.
                         United States Attorney's Office
                         Eastern District of New York
                         610 Federal Plaza
                         Central Islip, New York 11722


For Defendant
Michael Johnson:         Gary Matthew Kaufman, Esq.
                         Law Office of Gary Kaufman, PLLC
                         377 Broadway, 8th Floor
                         New York, New York 10013

                         Nicholas Hine, Esq.
                         Hine Law PLLC
                         P.O. Box 170096
                         Brooklyn, New York 11217


SEYBERT, District Judge:

      Presently before the Court are two Motions in Limine,

one, by the Government (ECF No. 233); and the other, by Defendant

1

Michael Johnson (hereinafter, "Johnson" or "Defendant") (ECF No. 234). The Government's Motion <u>in Limine</u> (hereinafter, "Government's Motion") requests the Court: "(1) admit evidence of uncharged criminal activity that is inextricably intertwined with [] direct evidence of the charged crimes [(hereinafter, "Government's First Request")]; and (2) preclude evidence of the victims' personal identifying information and involvement in sexual behavior not involving the defendant [(hereinafter, "Government's Second Request")]." (<u>See</u> Gov'ts MIL at 1.) Defendant responded, primarily in opposition, to the Government's Motion (hereinafter, "Defendant's Opposition"). (<u>See</u> Def.'s Opp'n, ECF No. 241.) The Defendant's Motion <u>in Limine</u> (hereinafter, "Defendant's Motion") requests the Court: (a) preclude specific testimony "regarding other crimes, wrongs, or acts that are highly prejudicial and/or irrelevant" (hereinafter, "Defendant's First Request"); (b) allow Defendant "to elicit testimony about sexual behavior that is inextricably intertwined with the charges in the indictment or subject to an exception to Federal Rule of Evidence 412" (hereinafter, "Defendant's Second Request"); and (c) preclude participants at trial "from referring to complaining witnesses as 'victims'" (hereinafter, "Defendant's Third Request"). (<u>See</u> Def.'s MIL at 1.) The Government responded, primarily in opposition, to the Defendant's Motion (hereinafter, "Government's Opposition"). (<u>See</u> Gov'ts Opp'n, ECF No. 243.)

Upon review of the Government's Motion and the Defendant's Opposition thereto, the Court hereby <u>GRANTS</u> the Government's Motion for the reasons explained below. Similarly, upon review of the Defendant's Motion and the Government's Opposition thereto, the Court hereby <u>GRANTS in part</u> and <u>DENIES in part</u> the Defendant's Motion for the reasons explained below.

<u>BACKGROUND</u>

The Court presumes the parties' familiarity with the background of this case, which is set forth in the Court's prior decision granting in part and denying in part Defendant's omnibus pretrial motion and is incorporated herein by reference. <u>See</u> <u>United States v. Bullen</u>, No. 22-CR-0494, 2025 WL 2235464, at *1-4 (E.D.N.Y. Aug. 5, 2025). Generally, the six-count Superseding Indictment charges Defendant with: one count of sex trafficking conspiracy between 2014 and November 2022; three counts of sex trafficking with respect to three different Jane Does in 2018, 2017-2018, and 2021, respectively; and, one count of interstate prostitution in or about 2021 (with respect to Jane Doe 3). (<u>See</u> Superseding Indictment, ECF No. 230.)

Trial in this case is scheduled to commence with Jury Selection on October 20, 2025. The parties' pending Motions were filed on September 29, 2025, and were fully briefed by October 6, 2025. They are summarized in greater detail below.

3

DISCUSSION

I.    Legal Standard

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." Highland Cap. Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing Luce v. United States, 469 U.S. 38, 41 n.4 (1984)). "The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence." United States v. Kuo Chen, No. 10-CR-0671, 2011 WL 197585, at *1 (E.D.N.Y. Jan. 20, 2011) (citing Luce, 460 U.S. at 40 n.2). In considering a motion in limine, a trial court should only exclude evidence when it is "clearly inadmissible on all potential grounds." Id. (citing Baxter Diagnostics, Inc. v. Novatek Med., Inc., No. 94-CV-5220, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998)); see also United States v. Ceballo, No. 13-CR-0308, 2014 WL 4980554, at *1 (E.D.N.Y. Oct. 6, 2014) ("Only when evidence is 'clearly inadmissible on all potential grounds' should evidence be excluded on a motion in limine." (quoting United States v. Paredes, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001))). Moreover, "[a] court considering a motion in limine may reserve judgment until trial so that the motion is placed in the appropriate factual context." Ceballo, 2014 WL 4980554, at *1 (citing Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp., 937 F. Supp. 276, 287 (S.D.N.Y. 1996)). In its discretion,

4

the Court may also alter a prior in limine ruling at trial "when
the case unfolds." Luce, 469 U.S. at 41-42 ("The [in limine]
ruling is subject to change when the case unfolds, particularly if
the actual testimony differs from what was contained in the
[movant's] proffer. Indeed even if nothing unexpected happens at
trial, the district judge is free, in the exercise of sound
judicial discretion, to alter a previous in limine ruling."); see
also United States v. Ulbricht, 79 F. Supp. 3d 466, 478 (S.D.N.Y.
2015) ("In limine rulings occur pre-trial, and that fact has
significance. The evidence at trial may come in differently than
anticipated, altering the solidity of the proffered basis for a
pre-trial ruling. The Court therefore invites parties who believe
that the factual record as developed at trial supports a revised
ruling to bring such an application in a timely manner.").

II.    Analysis

        The Court will first address the Government's Motion and
then will address the Defendant's Motion.

        A. Government's Motion

        In its Motion, the Government asks the Court to grant
its First Request to "admit evidence of uncharged criminal activity
that is inextricably intertwined with and direct evidence of the
charged crimes;" it also asks the Court to grant its Second Request
to "preclude evidence of the victims' personal identifying

information and involvement in sexual behavior not involving the defendant." (See Gov'ts MIL at 1.)

### 1. Government's First Request

The Government contends that proof of Defendant's convictions for weapon and drug possession at the Sayville Motor Lodge (hereinafter, "SML") are admissible because (1) it is relevant; (2) evidence of uncharged acts are admissible for non-propensity purposes; and (3) the probative value of this evidence outweighs the prejudice pursuant to the balancing test under Federal Rule of Evidence 403, and to the extent there is any unfair prejudice, the Court may issue a limiting instruction to the jury. (See Gov'ts MIL at 2-7.)

Defendant "does not oppose the introduction of evidence establishing Mr. Johnson's 2018 arrest and subsequent conviction, as the defense recognizes the extent that the facts of that conviction are likely intertwined with the [G]overnment's current allegations against Mr. Johnson."[1] (Def.'s Opp'n at 1; see also Def.'s MIL at 2.)

The Government notes this in its opposition to Defendant's Motion, stating: "Johnson concedes the admissibility

---

[1] However, Defendant does express his concern that "the [G]overnment will attempt to introduce information about Mr. Johnson's possession of a firearm, beyond the bonds of that arrest and conviction." (Def.'s Opp'n at 1.) The Court addresses Defendant's concerns infra, when analyzing his Motion below.

of the firearm and narcotics seized from his room at the [SML] in November 2018, as well as evidence of his state conviction for possessing those items. . . .    As such, the portion of the [G]overnment's motion <u>in limine</u> to preliminarily admit such evidence is unopposed and should be granted."  (Gov't Opp'n at 1 n.1.)

Therefore, based upon the Court's review and agreement with the Government's position, in addition to Defendant's concession, the Government's First Request is <u>GRANTED</u>. Furthermore, Defendant is permitted to request an appropriate limiting instruction to be read to the jury, if warranted.

2. <u>Government's Second Request</u>[2]

The Government next argues that "the Court should take reasonable steps to protect [Johnson's victims]" by concealing from the public record: (1) the victims' personal information, such as their addresses and contact information; (2) the victims' full names; and (3) the victims' "irrelevant sexual histories." (<u>See</u> Gov'ts MIL at 7-9.)

---

[2] The Government also states that, "[a]s a corollary to this request, the [G]overnment will seek to redact [the victims' full names and other personal information, such as their home addresses and contact information] from documentary exhibits introduced at the trial." (<u>See</u> Gov'ts MIL at 7 n.4.)  The Government is permitted to make that application at trial.

(i) <u>Limiting the Public Record to Not Include the Victims' Current Home Addresses or Contact Information</u>

The Government seeks to preclude the victims' current home addresses and contact information.  It cites to precedent in which a court found a defendant faced no prejudice where he was precluded from asking about a witness's address, because "although the government should come forward with a reason for withholding a witness's address, 'the reason may be that the answer may subject the witness to reprisals or that the question is being used to humiliate or annoy the witness.'"  (<u>See</u> Gov'ts MIL at 8.) Defendant concedes that he "does not intend to elicit irrelevant testimony from the alleged victims about their current home addresses or contact information."  (Def.'s Opp'n at 4.)  Thus, the Government's Second Request as to the precluding the victims' current home addresses and contact information from the public record is <u>GRANTED</u>.

(ii) <u>Limiting the Public Record to Only the Victims' First Names</u>

The Government seeks to limit the victims' identities to their first names only on the public record at trial because there is potential for "reprisals, humiliation, [and] annoyance."  (<u>See</u> Gov'ts MIL at 8.)  The Government avers the victims are expected to testify "at length about their often degrading and dehumanizing victimization at Johson's hands," and therefore, "publicly

8

revealing their identities would cause needless anxiety, embarrassment, and social stigma." (See id. at 10.) This is "especially true" because the Government claims that many of the expected victim witnesses "have made yearslong efforts to improve their lives, recover from harmful addictions, and rebuild familial, social, and financial relationships." (See id.) The Government further argues it cannot anticipate any "particularized need" on the Defendant's behalf for the disclosure of the victim witnesses' full identities on the public record at trial, because the victims' full identities were given to Defendant in discovery, "thus permitting him a full and fair opportunity to conduct an out-of-court investigation." (Id.)

In opposition, Defendant argues such limitation would violate his Sixth Amendment right "'to be confronted with the witnesses against him'" and "bolster the credibility of [the Jane Doe witnesses'] claims and undermine Mr. Johnson's right to the presumption of innocence." (Def.'s Opp'n at 4-5.)

As Judge Matsumoto explained in United States v. Forney, No. 24-CR-146, 2025 WL 2208298 (E.D.N.Y. Aug. 4, 2025) (hereinafter, "Forney Case"), which rationale this Court adopts and incorporates herein:

> The government moves to limit the use of the victims' personal information in open court. (ECF No. 80 at 33-36.) Specifically, the government moves to allow Jane Does-1, 2, and 3 to testify using their true first name and last initial only,

9

"limit their testimony about each other to first names only," and to prohibit Defendant from "elicit[ing] other personal identify[ing] information about them such as current addresses and contact information." (ECF No. 80 at 33.)

Defendant acknowledges that he will not "elicit irrelevant testimony from the alleged victims about their current home addresses or contact information," but argues, without support, that "allowing the government to conceal the identifies of [Jane Does-1, 2, and 3] would bolster the credibility of their claims and undermine Mr. Forney's presumption of innocence" and Defendant's Sixth Amendment right "to be confronted with the witnesses against him." (ECF No. 74 at 3) (citing U.S. Const. Am. VI.)

The Confrontation Clause of the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Davis v. Washington, 547 U.S. 813, 821 (2006) (citing Crawford v. Washington, 541 U.S. 36, 53-54 (2004)). Defendant's ability to cross-examine and confront the witnesses identified by their first name will not be impaired because, as the government correctly points out, this right is not absolute and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); Fuller v. Gorczyk, 273 F.3d 212, 219-20 (2d Cir. 2001) (same).

Here, the government argues that requiring Jane Does-1, 2, and 3 to testify using their full names would "cause needless anxiety and social stigma" and that limited use of their true first names would "protect the victims' safety and well-being, avoid harassment of them, and prevent undue embarrassment and other adverse consequences." (ECF No. 80 at 35.) Indeed, the government advises the Court that "all but one of the victims have left New York

10

and all four are trying to rebuild their lives. To
expose them now, after they have made great strides
to distance themselves from their past, would cause
serious distress." (ECF No. 80 at 35.)

The Court agrees that victims of sex trafficking
should not be forced to reveal their full names and
finds that "requiring victims to provide their
names in public 'could chill their willingness to
testify, for fear of having their personal
histories publicized.' " United States v. Raniere,
No. 20-cr-3520 (L), 2022 WL 17544087, at *7 (2d
Cir. Dec. 9, 2022) (affirming district court's
decision to allow victims to testify using only
their first names). Moreover, Defendant has
"failed to present a particularized need for the
witnesses' last names to be disclosed, since he
already [knows] the identity of the individuals and
. . . [has articulated] no reason why disclosing
last names would help the jury assess the
witnesses' credibility." Raniere, 2022 WL
17544087, at *7.

Indeed, any concern "that the withholding of the
witnesses' last names [could] bolster[ ] their
credibility by effectively endorsing their status
as victims," can be addressed with an "appropriate
jury instruction." Raniere, 2022 WL 17544087, at
*7 n.5 (affirming the district court's instruction
that the jury should "not make any inferences as to
the defendant's guilt or non-guilt from the fact
that certain last names are being withheld from
[the jury] and the public"). For example, the
Court may, if the Parties so request, instruct the
jury that certain witnesses will use only their
first names to protect their privacy and that the
jury should draw no inferences from the use of the
first names against the Defendant because the
Defendant is presumed innocent.

Although Defendant cites to United States v. Scott,
as an example of a trial "involving testimony of
individuals allegedly involved in sex trafficking
without measures being taken to conceal the
identities of any witnesses," Scott is inapposite
as the Court granted the government's motion to
permit a civilian witness to testify using only her

11

first name and to limit inquiry into her place of
residence due to legitimate safety concerns. No.
24-cr-158(KAM)(EDNY) (ECF Dkt. Order dated May 13,
2025.) <u>Here, where the government has made a
reasonable showing that Jane Does-1, 2, and 3 could
face harassment, "undue embarrassment," and
"needless anxiety" should they have to testify
using their full names, the Court finds that
permitting the alleged victims to testify under
only their first names and last initial is
appropriate and within the Court's discretion.</u>
(ECF No. 80 at 35-36.)  The government's motion to
limit the use of the alleged victims' personal
information in open court is, therefore, GRANTED.

<u>Id.</u> at *12-13 (emphasis added).  The arguments presented by both
the Government and the defendant in the <u>Forney</u> Case are nearly
identical to those presently before the Court.  The Court finds
Defendant here "fail[s] to present a particularized need for the
witnesses' last names to be disclosed, since he already [knows]
the identity of the individuals and . . . [has articulated] no
reason why disclosing last names would help the jury assess the
witnesses' credibility."  <u>Id.</u> at *13 (quoting <u>Raniere</u>, 2022 WL
17544087, at *7) (citation modified).  And Defendant's reliance
upon <u>Doe v. Delta Airlines, Inc.</u> is unavailing, as that case is a
civil battery, defamation, and false arrest action in which the
plaintiff sought to be allowed to proceed pseudonymously.  <u>See</u>
310 F.R.D. 222, 225 (S.D.N.Y. 2015), <u>aff'd,</u> 672 F. App'x 48 (2d
Cir. 2016).  Furthermore, as in the <u>Forney</u> Case, here, the Court
also finds the Government has made a reasonable showing that the
Jane Doe victims "could face harassment, undue embarrassment, and

needless anxiety should they have to testify using their full names." <u>Forney</u>, 2025 WL 2208298, at *13 (citation modified).

Thus, the Court finds permitting the victims to testify using only their first names is appropriate and within the Court's discretion. Therefore, the Government's Second Request as to limiting the public record to the victims first names only is <u>GRANTED</u>. Furthermore, Defendant is permitted to request an appropriate limiting instruction to be read to the jury, if warranted.

(iii) <u>Suppressing the Victims' "Irrelevant Sexual Histories"</u>

The Government contends, while Defendant "is entitled to test the victim witnesses' credibility through cross-examination, he should not be entitled to explore the witnesses' sexual histories in a way that suggests they were somehow more likely to have consensually engaged in commercial sex acts during the charged period" (hereinafter, "Irrelevant Sexual History Suppression Request"). (Gov'ts MIL at 11.) This is because, pursuant to Federal Rule of Evidence 412, "[i]n cases involving sexual misconduct, 'evidence offered to prove that a victim engaged in other sexual behavior' or 'evidence offered to prove a victim's sexual predisposition' is not admissible, except in three narrow circumstances." (<u>Id.</u> at 9 (quoting FED. R. EVID. 412).) However, the Government has acknowledged that "[it] expects to offer some

13

limited explanation of the victims' prior engagement in prostitution-related activity (to the extent a victim has any), in order to put their testimony into context, provide information regarding their personal history, and explain how they came to meet the defendant." (Gov't MIL at 10 n.5.)

In response, Defendant argues that testimony about prostitution at the [SML] during the course of the alleged sex trafficking conspiracy "would not constitute 'other sexual behavior' under [Federal Rule of Evidence] 412 and is thus, 'included in,' 'intrinsic to,' and 'inextricably intertwined' with the conduct charged in the indictment and would therefore fall outside the scope of Rule 412." (Def.'s Opp'n at 5.) Defendant also asserts that if the Court deems such acts of prostitution at the SML during the relevant period to be covered under Rule 412, "in addition to evidence of years of consensual sex between Mr. Johnson and Jane Doe #2," he contends he is using such evidence to prove consent, which falls into the Rule 412(b)(1)(B) exception. (See id. at 5-6.)

As Defendant observed in his Opposition, "[t]he arguments for admissibility of these acts of prostitution were made in Mr. Johnson's motion in limine, and as such are not restated here." (Id. at 5 n.2.) Therefore, since both the Government and Defendant have briefed the two opposing arguments for this same issue in their respective Motions, the Court further

14

analyzes and renders decision on this Irrelevant Sexual History Suppression Request below.  (See infra Section II.B.2.)

B. Defendant's Motion

In his Motion, Defendant asks the Court to grant his First Request to preclude specific testimony "regarding other crimes, wrongs, or acts that are highly prejudicial and/or irrelevant"; grant his Second Request to allow him "to elicit testimony about sexual behavior [of the Jane Doe witnesses who are his alleged victims] that is inextricably intertwined with the charges in the indictment or subject to an exception to Federal Rule of Evidence 412"; and grant his Third Request to preclude participants at trial "from referring to complaining witnesses as 'victims'".  (See Def.'s MIL at 1.)

1. Defendant's First Request

Defendant seeks to preclude certain testimony regarding other crimes, wrongs, or acts that are highly prejudicial and/or irrelevant.  Defendant's First Request includes precluding testimony about Defendant: (1) being a member of the Bloods street gang (hereinafter, "Gang Testimony"); (2) "traffick[ing] firearms between New York City and Long Island" (hereinafter, "Firearms Trafficking Testimony"); (3) shooting someone (hereinafter, "Shooting Testimony"); (4) having "violent sex with a now-deceased woman who allegedly worked for him as a prostitute" (hereinafter, "Violent Sex Testimony"); (5) "rap[ing] a prostitute who did not

15

work for him while she accompanied him to make a drug transaction, and that he pulled a gun on her in a separate incident" (hereinafter, "Rape and Gun Testimony"); (6) "point[ing] a gun at Jane Doe 2 while they had sex" (hereinafter, "Gun Involved in Sex Testimony"; and (7) "threaten[ing] to harm an individual who helped him sell drugs" (hereinafter, "Drug Sale Testimony"). (Def.'s MIL at 2-3.)

Pursuant to Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED R. EVID. 401. However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Pursuant to Federal Rule of Evidence 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID 404(b)(1). Other acts evidence, however, is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID 404(b)(2). "Under this Circuit's inclusionary approach to Rule

16

404(b), evidence of prior acts is admissible for any purpose other than to show a defendant's criminal propensity." United States v. McKen, No. 23-CR-0377, 2025 WL 1384125, at *7 (E.D.N.Y. May 13, 2025) (quoting United States v. Moye, 793 F. App'x 19, 21 (2d Cir. 2019) (citation modified)).

The Court address each of the seven categories of below.

### (i) Preclude Testimony that Defendant is a Member of the Bloods Street Gang

Defendant seeks to preclude this Gang Testimony at trial. (Def.'s MIL at 2-4.)  However, in its Opposition, the Government concedes it "does not intend to elicit testimony that Johnson was a member of the Bloods street gang." (Gov'ts Opp'n at 1.)  Therefore, because of the Government's concession, and because this Court agrees with Defendant generally that the probative value of this testimony would be outweighed by the potential prejudice, Defendant's First Request as to the Gang Testimony is GRANTED.

### (ii) Preclude Testimony that Defendant Trafficked Firearms Between New York City and Long Island

Defendant argues any claims he trafficked firearms "should be precluded as irrelevant and unduly prejudicial" (Def.'s MIL at 3 (citing FED. R. EVID. 401 & 403)) and because "introduction of evidence of these other acts would risk creating a trial within a trial and confusing the jury" (id. at 4).  In response, the Government contends this Firearms Trafficking Testimony pertains

17

"to the singular issue at trial—namely, whether Johnson used force, fraud, or coercion to cause his victims to engage in commercial sex acts." (Gov'ts Opp'n at 2.)  The Government furthers that one victim witness, Jane Doe 2, who is the "subject of a substantive sex-trafficking count, as well as the broader conspiracy charge," intends to testify that she was present when Defendant trafficked narcotics and firearms between New York City and Long Island, and has "unequivocally stated that Johnson's use of a firearm caused her to perform commercial sex acts". (See id. at 2-3.)

The Court agrees with the Government.  Pursuant to Rule 403, the Court has weighed the evidence and finds that its probative value is not substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. See FED. R. EVID. 403.  This is because the evidence, that Jane Doe 2 felt compelled to perform commercial sex acts because she observed Defendant's firearm usage and was present when Defendant trafficked the firearms and narcotics, is very probative to the issue of whether Johnson used force, fraud, or coercion to cause his victims to engage in commercial sex acts.  And, any potential prejudice or confusion is little to non-existent; Defendant has already conceded "the jury will also hear evidence that [he] sold drugs and possessed a firearm and does not oppose the introduction of evidence establishing [his] 2018 arrest and subsequent conviction" (Def.'s MIL at 2).  Additionally, while Defendant also

asserts this evidence is impermissible under Rule 404(b), the Court does not agree, as it is not being used to show Defendant's criminal propensity, but is being used to show motive, opportunity, intent, and plan.  Last, any potential prejudice or confusion that may arise can be cured with a limiting instruction.

Thus, the Defendant's First Request as to precluding Firearms Trafficking Testimony is DENIED, without prejudice to renew at trial if the testimony exceeds the scope and purpose described herein.  Furthermore, Defendant is permitted to request an appropriate limiting instruction to be read to the jury, if warranted.

(iii) Preclude Testimony that Defendant Shot Someone

Both the Defendant's and the Government's arguments as to whether the Shooting Testimony should be precluded are similar, if not effectively the same, to their respective arguments regarding preclusion of the Firearms Trafficking Testimony.  (See supra Section II.B.1.ii.)

The Court has weighed the evidence of the Shooting Testimony and finds its probative value is not substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury.  See FED. R. EVID. 403.  This is because the evidence, that Defendant allegedly told Jane Doe 2 he shot someone, makes it likely she felt further coerced to perform

commercial sex acts, especially in light of the fact that Jane Doe 2 has already stated Defendant's "use of a firearm caused her to perform commercial sex acts" (Gov'ts Opp'n at 3). This is probative to the issue of whether Johnson used force, fraud, or coercion to cause his victims to engage in commercial sex acts. While the potential for some prejudice may exist—as the testimony will ultimately divulge that Johnson allegedly shot someone with a firearm—the Court does not find the probative value of this evidence is substantially outweighed by a danger of unfair prejudice, as it will not be a surprise to the jury that Defendant possessed guns, as the jury will already know about Defendant's 2018 firearms conviction. Furthermore, Defendant's argument that this is impermissible evidence under Rule 404(b) is inapposite, as the evidence is not being used to show Defendant's criminal propensity, but is being used to show motive, opportunity, intent, and plan. Moreover, a limiting instruction may be issued to cure any such prejudice and/or confusion.

As a result, the Defendant's First Request as to precluding the Shooting Testimony is <u>DENIED</u>, without prejudice to renew at trial if the testimony exceeds the scope and purpose described herein. Furthermore, at the applicable time during trial, Defendant is permitted to request an appropriate limiting instruction.

(iv) <u>Preclude Testimony that Defendant Had
Violent Sex With a Now-Deceased Woman who
Allegedly Worked For Him as a Prostitute</u>

Defendant contends any claims he had violent sex with a now-deceased woman who allegedly worked for him as a prostitute "should be precluded as irrelevant and unduly prejudicial" (Def.'s MIL at 3 (citing FED. R. EVID. 401 & 403)) and because "introduction of evidence of these other acts would risk creating a trial within a trial and confusing the jury" (<u>id.</u> at 4). In response, the Government contends this Violent Sex Testimony is directly relevant, as "[s]everal victim-witnesses will testify . . . that they were raped by Johnson or witnessed Johnson rape a fellow sex worker . . .[and they] will testify that Johnson's sexual abuse—and the risk of future sexual and physical abuse at his hands—were factors that contributed to their continued engagement in commercial sex." (Gov'ts Opp'n at 4.) The Government furthers that a living witness is prepared to testify at trial that she observed Johnson "forcibly rape her roommate—a fellow sex worker in Johnson's employ—and that those observations contributed to her continued engagement in commercial sex." (<u>Id.</u> at 5 n.3.)

After weighing the evidence, the Court agrees with the Government that the probative value is great, and it is not substantially outweighed by unfair prejudice, confusing the issues, or misleading the jury. <u>See</u> FED. R. EVID. 403. This is because the evidence, that a trial witness observed Johnson

"forcibly rape her roommate" and said that observation "contributed to her continued engagement in commercial sex" (Gov'ts Opp'n at 5 n.3), is quite probative to the issue of whether Johnson used force, fraud, or coercion to cause his victims to engage in commercial sex acts. Additionally, the potential for prejudice or confusion is small here, as this is a case in which the Defendant is being tried for multiple sex crimes; therefore, the jury will already be hearing evidence and argument about other sex-based actions, interactions, and alleged criminal acts. (See Superseding Indictment.) Last, while Defendant argues this evidence should not be allowed pursuant to Rule 404(b), the Court disagrees, as the evidence is not being used to show Defendant's criminal propensity. And, Defendant may request a limiting instruction to cure any potential prejudice or confusion.

Thus, the Defendant's First Request as to precluding Violent Sex Testimony is <u>DENIED</u>, without prejudice to renew at trial if the testimony exceeds the scope and purpose described herein. Furthermore, Defendant is permitted to request an appropriate limiting instruction, if warranted.

(v) <u>Precluded Testimony that Defendant Raped a Prostitute who Did Not Work for Him as a Prostitute</u>

Both the Defendant's and the Government's arguments as to whether the Rape and Gun Testimony should be precluded are similar, if not effectively the same, to their respective arguments

22

regarding preclusion of the Violent Sex Testimony.  (See supra Section II.B.1.iv.)

Having weighed the evidence of the Rape and Gun Testimony, the Court concludes its probative value is not substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury.  See FED. R. EVID. 403.  The evidence, firsthand testimony that "Johnson raped a prostitute who did not work for him while she accompanied him to make a drug transaction, and that he pulled a gun on her in a separate incident" (Gov't Opp'n at 5 (citation omitted)), makes it more probable that the victim witness felt further coerced to perform commercial sex acts.  (See id. (citing United States v. Campbell, 6 F.4th 764, 772 (8th Cir. 2014) ("affirming admission of physical assaults—even those not strictly related to prostitution—because a 'jury could find his actions amounted to coercion if the assaults were part of a pattern intended to cause a person to believe that failure to perform an act of prostitution would result in serious harm'")(quoting 18 U.S.C. § 1591(e)))).  Moreover, the potential for prejudice is insubstantial, as the Defendant is charged with multiple sex crimes as to which the jury will hear evidence and arguments including other sex-based actions, interactions, and alleged criminal acts.  (See Superseding Indictment.)  Furthermore, Defendant's argument that this Rape and Gun Testimony violates Rule 404(b) is without merit,

as the evidence is not being used for Defendant's criminal propensity. And, as previously stated, a limiting instruction may be issued, upon request.

Thus, the Defendant's First Request as to precluding the Rape and Gun Testimony is <u>DENIED</u>, without prejudice to renew at trial if the testimony exceeds the scope and purpose described herein. Furthermore, Defendant is permitted to request an appropriate limiting instruction to be read to the jury, if warranted.

(vi) <u>Preclude Testimony that Defendant Pointed a Gun at Jane Doe 2 While They Had Sex</u>

Both the Defendant's and the Government's arguments as to whether the Gun Involved in Sex Testimony should be precluded are similar to their respective arguments regarding preclusion of the Firearms Trafficking Testimony and the Shooting Testimony. (<u>See</u> <u>supra</u> Sections II.B.1.ii & iii.)

Weighing the evidence of the Gun Involved in Sex Testimony, the Court finds the probative value of this testimony is not substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. <u>See</u> FED. R. EVID. 403. This is because the evidence, that Defendant "routinely brandished a firearm during sexual encounters with [Jane Doe 2], some of which were forcible, including instances where he placed the barrel of the weapon against her head and in her mouth" (Gov't's

24

Opp'n at 2), makes it likely that she felt further coerced to perform commercial sex acts, especially given Jane Doe 2 has stated already Defendant's "use of a firearm caused her to perform commercial sex acts" (Gov'ts Opp'n at 3). This is probative to the issue of whether Johnson used force, fraud, or coercion to cause his victims to engage in commercial sex acts. While the potential for some prejudice may exist, the Court does not find that the probative value of this evidence is substantially outweighed by a danger of unfair prejudice, as the jury will already be aware that the Defendant possessed guns after hearing about Defendant's 2018 firearms conviction. Further, any argument that this testimony should be precluded because of Rule 404(b) fails, as the evidence is not being used to show Defendant's criminal propensity, but is being used to show motive, opportunity, intent, and plan. A limiting instruction may also be read to the jury to clarify any confusion and minimize any potential prejudice.

Accordingly, the Defendant's First Request as to precluding the Gun Involved in Sex Testimony is <u>DENIED</u>, without prejudice to renew at trial if the testimony exceeds the scope and purpose described herein. Furthermore, at the applicable time during trial, Defendant is permitted to request an appropriate limiting instruction to be read to the jury.

(vii) <u>Preclude   Testimony   that   Defendant
      Threatened  to  Harm  an  Individual  Who
      Helped Him Sell Drugs</u>

Defendant seeks to preclude this Drug Sale Testimony at trial.  (Def.'s MIL at 2-4.)   However, in its Opposition, the Government concedes it "does not intend to elicit testimony that Johnson . . . threatened to harm an individual who helped him sell drugs."   (Gov'ts Opp'n at 1.)   Therefore, because of the Government's concession, and because this Court agrees with Defendant generally that the probative value of this testimony would be outweighed by the potential prejudice, Defendant's First Request as to the Drug Sale Testimony is <u>GRANTED</u>.

## 2. Defendant's Second Request

Defendant requests the Court "allow testimony about sexual behavior that is "[i]nextricably [i]ntertwined with the [i]ndictment" (hereinafter, "Inextricably Intertwined Request"). (Def's MIL at 4.)   Defendant argues "any testimony about prostitution at the [SML] would not constitute 'other sexual behavior' under Rule 412 [because] prostitution at the [SML] is included in the conduct charged in Count One of the superseding indictment."  (<u>See</u> <u>id.</u> at 5.)  Defendant also asserts any cross-examination about a Jane Doe witness's prior prostitution at the SML "would not be intended to expose any witness's 'sexual predisposition'." (<u>See</u> <u>id.</u>)  Defendant alternatively moves under Rule 412 for a ruling permitting inquiry into: (1) "all acts of

26

prostitution committed by any complaining witness at the [SML] during the charged time period" (hereinafter, "First Rule 412 Request"); and (2) "sexual encounters he had with Jane Doe 2, in order to prove that his relationship with [her] was consensual" (hereinafter, "Second Rule 412 Request").  (Id. at 6.)

Rule 412 prohibits the following evidence from a criminal proceeding involving alleged sexual misconduct: "(1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition."  FED. R. EVID. 412(a).  However, there are three exceptions to the rule, where the court may admit the following evidence in a criminal case:

> (A) evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;
> (B) evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and
> (C) evidence whose exclusion would violate the defendant's constitutional rights.

FED. R. EVID. 412(b).

In response to the Defendant's argument regarding his Inextricably Intertwined Request, the Government explains that in its opening Motion, it stated its intention "to elicit on direct examination limited background testimony concerning certain Jane Doe witnesses' prior work as prostitutes to, inter alia, assist

the jury in understanding the circumstances under which those witnesses came to know Johnson and be involved in commercial sex work at the SML," which means "Johnson is entitled to test the witnesses' credibility on these subjects through cross-examination, so long as he does not suggest their sexual histories somehow rendered them more likely to have consensually engaged in commercial sex acts during the charged period." (Gov'ts Opp'n at 6.)  Thus, the Government concedes that, since "Johnson asserts that his inquiry will 'not be intended to expose any witness's sexual predisposition' as forbidden by Rule 412, and will instead aim simply to provide 'a necessary backdrop to understanding how Johnson met them', the [G]overnment does not anticipate a Rule 412 problem." (Id. (quoting Def.'s MIL at 5) (citation modified).) Therefore, Defendant's Second Request as to the Inextricably Intertwined Request is GRANTED, and as to the First Rule 412 Request is DENIED AS MOOT.  However, the Government may object to lines of questioning at trial if the questioning "veer[s] away from the narrowly tailored presentation previewed in Johnson's motion and instead invite[s] the jury to imply that any witnesses' prior work as a prostitute negates the element of fraud, force, and coercion." (Gov'ts Opp'n at 6 n.4.)

In response to Defendant's Second Rule 412 Request, the Government asserts Johnson's desire to cross-examine Jane Doe 2 about her sexual relationship with Johnson to prove the

28

relationship was consensual is "a misapprehension of the law."
(Id. at 6.)  This is because Johnson is not charged with raping
Jane Doe 2; instead, he is charged with using force, fraud, and/or
coercion to cause Jane Doe 2 to engage in commercial sex with third
parties for money.  (See id. at 7.)

        The Court agrees with the Government.  Johnson is not
charged with raping Jane Doe 2; thus, the question of Jane Doe 2's
consent to a sexual relationship with Johnson is inapposite: (1)
it does not meet the exception contemplated in Rule 412(b)(1)(B);
and (2) this evidence would be irrelevant under Rule 401.
Furthermore, Johnson is not permitted to use the evidence in his
Second Rule 412 Request to "backdoor" his way into trying to show
Jane Doe 2 engaged in other sexual behavior or that she has a
sexual predisposition, evidence that is inadmissible under Rule
412(a).  Thus, Defendant's Second Request as to his Second Rule
412 Request is DENIED.

        Last, based on the foregoing, the Government's Second
Request as to its Irrelevant Sexual History Suppression Request,
as summarized above (see supra Section II.a.2.iii), which is
substantially related to the Defendant's Second Request, is
GRANTED.

### 3. Defendant's Third Request

        Defendant asks the Court to preclude trial participants
from referring to the complaining witnesses as "victims."  (Def.'s

MIL at 7-8.)   Defendant argues "[w]hether Mr. Johnson committed any offenses against the complaining witnesses—and thus, whether they can be categorized as "victims"—has not yet been determined. Indeed, that is the very issue for the jury to decide at trial . . . ."   (See id. at 7.)   Defendant further contends, "in cases like this, where the defendant denies any wrongful conduct, the government must prove beyond a reasonable doubt that the complaining witnesses are, in fact, 'victims' by proving that an offense has been committed."   (See id. at 7-8.)   The Government argues, in opposition, that "no Court within this District has ruled that the use of the word 'victim' is per se prejudicial." (Gov'ts Opp'n at 7 (quoting United States v. Clanton, No. 23-CR-0328, 2024 WL 1072050, at *17 (E.D.N.Y. Mar. 12, 2024) (citation modified).)   The Government also argues Defendant "has not indicated that he seeks to assert a defense based on the assertion that the alleged victims are not in fact victims of a crime or that he seeks to assert a defense based on his denial that any crime has occurred."   (Id. at 8 (quoting Clanton, 2024 WL 1072050, at *17) (citation modified).)

While it is true courts in this District have not ruled that the use of the word "victim," is per se prejudicial, as the Government argues, the "propriety of the term 'victim' is a fact-specific inquiry."   United States v. Franzone, No. 21-CR-0446, 2025 WL 1094496, at *3 (S.D.N.Y. Apr. 11, 2025) (citing Clanton,

2024 WL 1072050, at *17) (emphasis added).  Courts often preclude the Government from referring to witnesses as victims in cases where: (1) "there is no identifiable victim or crime against a person"; or (2) "where the defense is that no crime occurred." See id.

As to the first bucket of cases in which courts tend to preclude the Government from referring to witnesses as victims, the charges against Johnson—sex trafficking conspiracy, sex trafficking, and interstate prostitution—are crimes against persons, and alleged victims have been identified.  (See Superseding Indictment.)  However, as to the second bucket of cases in which courts tend to preclude the Government from referring to witnesses as victims, "where the defense is that no crime occurred," is not as clear cut in this case as the Government attempts to argue.  The Government states the Defendant has not indicated "he seeks to assert a defense based on his denial that any crime has occurred."  (Gov't Opp'n at 8.)  However, in Defendant's Motion, he compares his case with one in which someone has been shot; in a gun shooting case, "the only question is who committed the underlying act," whereas, in contrast to this case, "[D]efendant denies any wrongful conduct" and "the [G]overnment must prove beyond a reasonable doubt that the complaining witnesses are, in fact, 'victims' by proving that an offense has been committed."  (Def.'s MIL at 7-8 (emphasis added).)  Thus, it

appears to the Court that it is likely Defendant's defense is, in fact, that no crime has occurred.  Even though it is not yet clear to the Court if Defendant's defense as to his sex trafficking conspiracy charge is that no crime occurred at all, as opposed to that Defendant was not a part of the alleged sex trafficking conspiracy, in an effort to be reasonably cautious, and because Defendant is being tried by himself without any of his alleged co-conspirators, the Court deems it best to set some parameters as to when and how witnesses can or cannot be referred to as victims.

Judge Garaufis' Daskal decision analyzes the landscape of this issue within the Second Circuit, in the context of a case in which the defendant was also charged with sex-related crimes[3]. See United States v. Daskal, No. 21-CR-110, 2023 WL 9424080 (E.D.N.Y. July 12, 2023) (hereinafter, "Daskal Case").  Therefore, this Court adopts Judge Garaufis' rationale and decision in the Daskal Case and incorporates same herein:

> This court is far from the first district court in this Circuit to address the issues of whether and how the Government may use the word "victim" in the course of a criminal trial. Most courts to reach this issue have declined to preclude the Government's use of the word wholesale. Some, including this court in a past case with distinguishable facts, have been primarily concerned with the risk (or lack thereof) of the

---

[3] The defendant in the Daskal Case was charged with one act of Coercion and Enticement pursuant to the Mann Act, 18 U.S.C. §§ 2422(b) and 3551 et seq., and one count of Transportation of a Minor with Intent to Engage in Criminal Sexual Activity, 18 U.S.C. §§ 2423(a) and 3551 et seq.  See Daskal, 2023 WL 9424080, at *1.

jury being exposed to unnecessarily inflammatory statements. See United States v. Full Play Group, S.A., No. 15-CR-252, (E.D.N.Y.), Order of Jan. 4, 2023 ("[T]he words that [the defendant] seeks to excise are . . . neither extraneous or inflammatory."); United States v. Gasperini, No. 16-CR-441, 2017 WL 3140366, at *7 (E.D.N.Y. July 21, 2017) ("[T]he court does not view the use of the challenged terms as unduly prejudicial in light of the issues being tried.")  Others have stated, in sum and substance, that this is unlikely to arise as a real issue during the Government's case-in-chief, and that it is permissible as part of a jury address. See United States v. Benjamin, No. 18-CR-874 (S.D.N.Y.), Tr. of May 8, 2019, (Dkt. 53), at 6 ("I take it this would only come up . . . during either opening statements or summation. No one is going to say we now call victim 1. You are going to have, as I understand it, a pseudonym. I don't see any problem with that term being used, that's the government's view, as a victim.").

At least one judge has relied on curative jury instructions to ameliorate any possible prejudice to the Defendant. United States v. Dupigny, No. 18-CR-528 (S.D.N.Y.), Tr. of Oct. 17, 2019, (Dkt. 198), at 49-50 ("It strikes me that precluding [the use of the words 'pimp' and 'Victim'] altogether is both unnecessary and impractical . . . [I]t's just hard to engage in a discussion of the charges here without using those terms, but again, I think any prejudice can be addressed through appropriate cautionary instructions."). In Maxwell, Judge Nathan denied a similar motion on the basis that "[i]t is appropriate for the government to use [the terms "victim" and "minor victim"] as representative of its litigating position," but specifically noted her intention to "revisit" the issue, "[i]f the government does this in any way that is atypical or unduly prejudicial." No. 20-CR-330 (S.D.N.Y.), Tr. of Nov. 1, 2021, (Dkt. 465), at 4-5. One court, however, deviated slightly from the others. Persuaded by a host of out-of-circuit case law, the Ray court denied a motion to preclude reference to the complaining witnesses as "victims" in the Government's jury addresses but granted the motion to preclude such reference outside of the

33

Government's jury addresses. United States v. Ray, No. 20-CR-110, 2022 WL 558146, at *25-26 (S.D.N.Y. Feb. 24, 2022).

This court lands somewhere in between the conclusions reached in Ray and Maxwell. In many criminal cases, a witness's "victim-hood" is not in dispute. A gunshot victim is a gunshot victim regardless of whether the criminal defendant being tried is ultimately convicted of pulling the trigger. But here, the question of whether the Complaining Witness suffered the alleged harm goes to the crux of the charges against Daskal. Such factual determinations are to be made by the jury alone. To refer offhand to the Complaining Witness as "the victim" throughout the presentation of the evidence could suggest otherwise, implying the factual issue is settled or the Government knows she is a victim for reasons unknown to the jury. See United States v. Arias-Javier, 392 F. App'x 896, 898 (2d Cir. 2010) (Summary Order) ("The prosecution is permitted vigorously to argue for the jury to find its witnesses credible" but not to "link its own credibility to that of the witness, or imply the existence of extraneous proof supporting the witness's credibility."). That said, "the Government is permitted to lay out for the jury in its opening statement what it expects the evidence to prove, including that the [complaining witness is] a victim[ ]," Ray, 2022 WL 558146, at *26, and is wholly within its rights to argue forcefully its theory of the case during its summation. Lastly, it would, as Judge Furman has stated, be "both unnecessary and impractical" to preclude all persons from using such words throughout the trial, as it may be "hard to engage in discussion of the charges [ ] without using those terms." United States. v. Dupigny, No. 18-CR-528 (JMF) (S.D.N.Y.), Tr. of Oct. 17, 2019, (Dkt. 198), at 49-50.

As such, Daskal's motion to preclude is GRANTED IN PART AND DENIED IN PART. The Government is permitted to refer to the Complaining Witness as a "victim" or a "minor victim" during its opening and closing jury addresses, so long as it does so in a manner that makes clear its reliance on the

<u>evidence presented to the jury at trial. The Government is also permitted to elicit witness testimony relating to the Complaining Witness's alleged victimhood. To preclude reference to the "victim" entirely would be "unnecessary and impractical" and would detract from the Government's ability to prosecute its case and attempt to prove the Defendant's guilt in good faith. But the Government may not refer to the Complaining Witness as the "victim" during its presentation of the evidence. It may not call "the victim" to the stand to testify. Nor may it ask a corroborating witness how they know "the victim," and so forth. If, at trial, Daskal feels the Government has crossed the line into impermissible use of the term "victim," he should feel free to object.</u>

<u>Id.</u> at *12-13 (citation modified) (emphasis added). Accordingly, the Defendant's Third Request is <u>GRANTED in part</u> and <u>DENIED in part</u>. The Government may refer to the victim witnesses as "victims" during its opening and closing arguments, in a manner that makes clear its reliance on evidence to be presented to the jury at trial. The Government may also elicit testimony relating to the victim witnesses' alleged victimhood. However, the Government may not: (1) refer to the victim witnesses as "victims" during its presentation of the evidence; (2) call "the victim" to the stand for testimony; and/or (3) ask other witnesses how they know "the victim." If, during trial, the Defendant believes the Government has impermissibly crossed the boundary for the use of the term "victim" based on the parameters the Court has set above, the Defendant may raise an objection.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED: the Government's Motion in Limine as to the:

I.    Government's First Request is GRANTED;

II.   Government's Second Request is:

    a. GRANTED as to the precluding the victims' current home addresses and contact information from the public record;

    b. GRANTED as to limiting the public record to only the victims' first names; and

    c. GRANTED as to the Irrelevant Sexual History Suppression Request.

IT IS FURTHER ORDERED, for the foregoing reasons, Defendant's Motion in Limine as to the:

III.  Defendant's First Request is:

    a. GRANTED as to Gang Testimony;

    b. DENIED, without prejudice, as to Firearms Trafficking Testimony;

    c. DENIED, without prejudice, as to Shooting Testimony;

    d. DENIED, without prejudice, as to Violent Sex Testimony;

    e. DENIED, without prejudice, as to Rape and Gun Testimony;

    f. DENIED, without prejudice, as to Gun Involved in Sex Testimony;

    g. GRANTED as to Drug Sale Testimony;

36

IV.   Defendant's Second Request is <u>GRANTED in part and DENIED</u>
      <u>in part</u>; and

V.    Defendant's Third Request is <u>GRANTED in part and DENIED in</u>
      <u>part</u>.


                                    SO ORDERED.


                                    /s/ JOANNA SEYBERT
                                    Joanna Seybert, U.S.D.J.

Dated: October 17, 2025
       Central Islip, New York